ment of the special object to which the tax is to be applied, required to be made in every law levying taxes, and the constitution expressly prohibits its application to any other. While, therefore, the law does not prohibit the reimbursement of the special tax fund out of the money raised under its authority, the constitution does. The expenses on account of which the money was taken from the fund, have already been paid with the money of the state. It is true the money paid ought not to have been so used, but it was none the less on that account the money of the state. The bond-holders might, perhaps, if the money still remained in the treasury, compel its application to the payment of the interest on their bonds, but until so applied it did not become their property, and remains that of the state. It is not claimed that there is now any money in the treasury, except that which has been collected from taxes levied under the revenue laws of 1873 and 1874, and it is clear to our minds that there is no existing law which requires or even authorizes the treasurer to reimburse the special fund from that. The state may be under obligation to provide for such reimbursement, but the state and the treasurer occupy different positions. The state is the debtor, and is bound by its pledge of faith to provide means and pay its debts. The treasurer is but an agent of the state, bound only to pay its debts when required to do so by a valid law. If such a law exists, and he refuses to act, a proper court will by mandamus compel him to perform his duty. If he threatens to divert money appropriated for the payment of a debt, on proper application he may be restrained. But to authorize interference in either case, it must clearly appear that he wrongfully refuses to execute a valid law, which has been enacted by the legislative department for his guidance. The court cannot make laws for him. It can only compel him to execute such as have been made.

As there is therefore no money in the treasury which the treasurer is authorized or required by any existing law to appropriate for the reimbursement of the special tax fund, we cannot restrain him from paying out the funds in his hands until the reimbursement has been made. The principal in this case cannot be reached through the agent now before the court. The bill is dismissed with costs.

---

## Case No. 12,641.

### In re SELIG.

[1 N. B. R. 186;[1] Bankr. Reg. Supp. 40; 6 Int. Rev. Rec. 206.]

District Court, E. D. New York. Nov. 28, 1867.

BANKRUPTCY—DISCHARGE—EXAMINATION OF BANK-RUPT'S WIFE—GOOD FAITH.

Where an assignee, who was also a creditor, neglected to make his report on the return day

[1] [Reprinted from 1 N. B. R. 186, by permission.]

of the order to show cause why bankrupt should not be discharged, but subsequently appeared before the register and applied for an order for examination of bankrupt's wife: *Held*, that such order should be refused, as it did not appear to have been made in good faith.

[In the matter of Moses Selig, a bankrupt.]

By DAVID C. WINSLOW, Register:

I, David C. Winslow, one of the registers of said court in bankruptcy, do hereby certify, that in the course of the proceedings in said cause before me, the following question arose pertinent to the said proceedings, and was stated and agreed to by the counsel for the opposing parties, to wit: George Wilcox, for the assignee, and Benedict & Boardman, who appeared for the bankrupt. The usual order was made by me for creditors and others to show cause before me, on the 18th of November, at ten a. m., why the bankrupt should not be discharged from his debts, and for second and third meetings of creditors. Notice was served upon Stephen Hyatt, who was both a creditor and assignee, by the clerk, as appears by his certificate. On the return day the bankrupt appeared with his attorney, and moved for a certificate to the effect that he was entitled to a discharge, which was granted upon producing the affidavit of the assignee, per form 35. The assignee had not filed his report, and his attorney, S. A. Underhill, was requested by the register and the attorney for the bankrupt to call upon him for that return, which he did on that day, but the assignee refused to make the return. On the 19th an order was made requiring the assignee to make his return to show cause before me on the 21st, at one p. m. Previous to that hour, but on the same day, Mr. George Wilcox, on behalf of the assignee, applied, upon affidavit of the assignee, for an order for the examination of the bankrupt's wife, which I then denied, with liberty to apply at one p. m., the hour fixed for the assignee to make his return or show cause. At that hour the assignee renewed his motion for an order to examine the bankrupt's wife, and at the same time filed the assignee's return as required by law. The attorney for the bankrupt objects to the granting of the order applied for, upon the ground that the application comes too late, the time to show cause, and for the second and third meetings of creditors, having been held on the 18th, and all the bankrupt's proceedings having been regular; there being no opposition at that time, he would have been entitled to a certificate from the register upon which a certificate of discharge would have been granted by the court, had the assignee performed his duty, and made his return at the proper time. That return not having been made, the register could not certify that all the proceedings were regular, and hence the bankrupt has been delayed in obtaining his discharge.

The bankrupt himself was examined upon the application of the assignee on the 22d of October last. I refuse to grant the order for

the examination of the wife of the bankrupt upon the grounds: (1) The assignee is guilty of laches. Had he made his return at the proper time, the bankrupt would have obtained his discharge. The assignee cannot take advantage of his own wrong. He had actual notice, as a creditor, of the meeting referred to, and knew it was his duty as assignee to present his report at that time. Besides this, he was called upon by his attorney to make his report, and refused to do so. (2) The examination of the wife of the bankrupt is not a matter of right. "She may be required to attend before the court for good cause shown." Section 26. I do not think good cause has been shown; on the contrary, I think the application is not made in good faith, but for the purpose of delaying the bankrupt in obtaining his discharge, to which he is clearly entitled as the matter now stands. He makes no excuse whatever for not making his return at the proper time, nor for not making this application at an earlier date. The affidavit upon which the application is made does not state a solitary fact, nothing but suspicion and belief. It must be borne in mind that the applicant is a creditor as well as assignee, and his zeal may not be altogether official. And the said parties requested that the same should be certified to the judge for his opinion thereon.

Dated at Brooklyn, November 22, 1867.

BENEDICT, District Judge. The decision of the register not to grant an order for the examination of the wife of the bankrupt upon the ground that the application was not made in good faith, but merely for delay, is confirmed.

---

## Case No. 12,642.

#### SELIGMAN v. CHARLOTTESVILLE NAT. BANK.

[3 Hughes. 647; 25 Int. Rev. Rec. 385; 9 Reporter, 72; 2 Nat. Bank Cas. (Browne) 195; 1 Wkly. Jur. 584; 21 Alb. Law J. 196.] [1]

Circuit Court, W. D. Virginia. Oct. Term, 1879.

BANKS—NATIONAL—GUARANTEE OF CREDIT.

1. A national bank, upon the deposit of collateral security with it, has no power to guarantee the obligation of the person making such deposit.

[Cited in brief in Ellerbe v. National Exch. Bank of Kansas City, 109 Mo. 445, 19 S. W. 241.]

2. A national bank may lend money on personal security, but not on its credit.

In covenant.

W. J. Robertson and R. G. H. Kean, for plaintiffs.

1. The true construction of the transaction, upon the face of the papers set out in the declaration, is that the proceeds of the letter of credit were to go into the hands of the bank, and were to be used when so realized in discounting from time to time, as realized, so much of the "good business paper" hypothecated by the Flanagans.

2. In this (the true) view of the transaction, the question resolves itself into the inquiry whether a national bank can borrow money?

3. It seems to be conceded (as it must be) that, under certain circumstances, a national bank can borrow money, e. g., to meet a pressing liability. If so, who is to judge of the emergency? [2] Obviously, the lender cannot; therefore the question of illegality can only arise between stockholders and officers.

4. If a national bank can borrow money for legitimate banking purposes this transaction will be sustained, being, in legal effect, a mere method of securing a loan, the proceeds of which were to be used in discounting "business paper."

5. The subsequent insolvency of the bank and of B. C. Flanagan & Son in no way affect the legal questions. The receiver stands where the bank would if it had not failed. Woods, J., in Casey v. La Société de Credit Mobilier [Case No. 2,496].

6. The later view, in England and the United States, frowns on the defense of ultra vires, as applied to executed contracts, even when the contract is such as, upon a nice construction, would be regarded as beyond the corporate objects. See cases cited in printed note in Slaughter v. City of Lynchburg; also, Riche v. Ashbury Railway Carriage & Iron Co., L. R. 9 Exch. 244 [L. R. 7 H. L. 653], article on "Ultra Vires." January 4, 1878; Houghton v. First Nat. Bank of Elkhorn, 26 Wis. 663; Bushnell v. Chautauqua County Nat. Bank, 10 Humph. 378, Thomp. Nat. Bank Cas. 794; Whitney Arms v. Barlow, 63 N. Y. 62; Bissell v. Michigan, S. & N. I. R. Co., 22 N. Y. (8 Smith) 258; and Parish v. Wheeler, Id. 494; First Nat. Bank of Charlotte v. National Exch. Bank, 92 U. S. 122, Thomp. Nat. Bank Cas. 124; Town of Coloma v. Eaves. 92 U. S. 484; Commissioners of Douglas County v. Bolles, 94 U. S. 104; cases cited in the foregoing.

7. When the act complained of has been executed and the creditor has parted with his money on the faith of what the corporation has promised, only a substantial adherence to the purpose of its creation is required to bind it, although the act might be one which, if executory, it might be restrained from engaging in. Coleridge, J., in Eastern Co. R. Co. v. Hawkes, 35 Eng. Law & Eq. 29; Comstock, C. J., in Bissell v. Michigan, S.

---

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission. 9 Reporter. 72. and 21 Alb. Law J. 196, contain only partial reports.]

[2] See National Bank of Commerce v. National Bank of Missouri, Append. Fed. Cas.; also, Swayne, J., in Merchants' Nat. Bank v. State Nat. Bank, 10 Wall [77 U. S.] 604. "If the contract can be valid under any circumstances, an innocent party in such a case has a right to presume their existence, and the corporation is estopped to deny them." Same case, Thomp. Nat. Bank Cas. 55, for above-quoted expression